**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

RICHARD MCDONALD,                          )
                                           )
                    Plaintiff,             )     **CIVIL ACTION**
                                           )
v.                                         )     No.  05-1194-MLB
                                           )
HOWARD RITCHIE, JR.,                       )
                                           )
                    Defendant.             )
_____)

**MEMORANDUM AND ORDER**

Before the court are the following:

1.  Defendant's motion for judgment on the pleadings
    (Docs. 13 and 14);

2.  Plaintiff's memorandum in opposition (Doc. 16);

3.  Defendant's motion for sanctions (Doc. 17);

4.  Defendant's motion to strike (Doc. 18);

5.  Plaintiff's memorandum in opposition to motion for
    sanctions (Doc. 21);

6.  Plaintiff's memorandum in opposition to motion to
    strike (Doc. 22);

7.  Plaintiff's motion to dismiss without prejudice
    (Doc. 23);

8.  Defendant's memorandum in support of his motion for
    summary judgment (Doc. 25);

9.  Plaintiff's memorandum regarding perjury allegations
    (Doc. 26); and

10. Defendant's response to plaintiff's memorandum
    regarding perjury allegations (Doc. 27).

For the following reasons, defendant's dispositive motion and
motion for sanctions are sustained.

Background

This case comes before the court under a most unusual set of facts. In 2003, in a reversal of roles, defendant Howard Ritchie, Jr. sued plaintiff Richard McDonald in a case entitled <u>Howard Ritchie, Jr. and Patricia Burke v. Alma, Inc., Thomas C. Moore, James W. Moore and Richard McDonald</u>, Case No. 03-1037. After considerable pretrial skirmishing, the case went to a jury trial in November 2004. Among other things, Ritchie and Burke set out to prove that McDonald, a friend and influential businessman, solicited their purchase of lease interests in oil properties (units) offered by Alma, Inc., investments which ultimately proved to be financially unrewarding. At some point in time, but after they purchased the units, Ritchie and Burke learned that Alma, Inc. had agreed to pay, and had paid, McDonald $1,000 for each unit purchased. Ritchie and Burke asserted that the payments to McDonald constituted a "commission or other remuneration" paid to an agent which required the Alma, Inc. transactions to be registered under the Kansas Securities Act. Because the interests were not registered, Ritchie and Burke sought to recover their unlucky investments from McDonald, Alma, Inc. and the Moore brothers, owners of Alma, Inc.

McDonald admitted that he had an agreement with Alma, Inc. and the Moore brothers under which he would receive $1,000 for each unit sold. McDonald also admitted that he did not tell prospective purchasers, including Ritchie, about the $1,000 payment. McDonald strenuously denied, however, that the $1,000 constituted a "commission or other remuneration" or a fee paid or given to an

agent in exchange for his services, within the meaning of applicable Kansas statutes. McDonald took the position that he was not acting as an agent but rather as a middleman or "finder[1]" who was merely trying to make friends and associates aware of what he, McDonald, considered a good investment opportunity.

On the second day of trial, during McDonald's testimony, the parties announced that they had reached a settlement. The court, always wary about settlements reached in the midst of trial, obtained on the record assurances from all parties that the settlement was a good one and then excused the jury. Neither McDonald nor Martin Keenan, his counsel, said or even suggested that McDonald had been coerced to settle. Some problems evidently arose regarding payment of the settlement amounts but eventually those were resolved and Case No. 03-1037 was dismissed with prejudice on March 8, 2005. At this point, the court justifiably assumed that he had heard the last of the dispute between Ritchie, McDonald and others regarding the sale of Alma, Inc. interests. The court's assumption proved to be incorrect.

During the pendency of Case No. 03-1037, other disappointed investors had sued McDonald in Kansas state courts in Russell and Johnson counties. The present status of those cases is unknown but Steve Robison, Ritchie's counsel, represents the plaintiffs in those cases. McDonald is represented by Keenan. It is quite

---

[1]McDonald apparently testified in a case filed in state court, <u>Merar, et al. v. Alma, Inc., et al.</u>, that the $1,000 represented a "gratuity. . . that in no way was a finder fee, in no way was anything other than termed a gratuity . . . ." For purposes of this case, the nature of the payment is not relevant.

obvious from what has occurred that relations between Robison and Keenan are strained, to say the least.

By letter dated May 3, 2005 to Ritchie, Keenan announced on behalf of McDonald that a suit claiming intentional infliction of emotional distress, abuse of legal process and "numerous other torts" would be filed on May 20, 2005 unless "suitable arrangements are made for settlement." The letter stated, in pertinent part:

> Mr. Ritchie, if you wanted to sue Dick McDonald and Alma, Inc. that is your business. However, you had no right to recruit others to join the cause, and to use investor lists to call each and every investor to try to persuade them to become part of your lawsuit. This was your extortion tactic from the beginning–to get the names of other investors, and put pressure on the defendants until they settle with you.
>
> You actions in intentionally convincing others to sue Dick McDonald constitute abuse of legal process, intentional infliction of emotional distress, and numerous other torts. As I said, if you want to sue Dick McDonald, that is your choice, but recruiting others to sue him to intentionally inflict pain and extort money from Dick McDonald is a different matter. It is illegal.

Keenan stated that McDonald's settlement demand was $250,000.

A copy of Keenan's letter was sent to Robison who responded in a letter to Keenan dated May 5, 2005. In substance, Robison denied that Ritchie had "recruited" others to sue McDonald and informed Keenan if the threatened suit was filed, Ritchie would respond with "his own claims pursuant to Rule 11 and other claims. Since you are aware (or could be made aware by limited research) of the frivolous nature of the claims, Mr. Ritchie will likely make claim against you as well as against Mr. McDonald." Evidently, Robison's statements fell on deaf ears because, on June 5, 2005, McDonald, represented by Keenan, sued Ritchie in Russell County District

-4-

Court.   The case was removed to this court on June 22, 2005.
McDonald alleged, in substance, that Ritchie "actively recruited"
the plaintiffs in the state court cases to sue him to recover for
the illegal sale of unregistered securities.   Significantly,
McDonald also claimed that Ritchie's  alleged "recruitment"
amounted to "an abuse of legal process" which "extorted" McDonald's
agreement to settle Case No. 03-1037.

On July 7, 2005, Magistrate Judge Bostwick entered an order
setting a scheduling conference for August 16, 2005.   Thereafter,
on August 3, 2005, Keenan filed a motion to withdraw as counsel for
McDonald (Docs. 7 and 8) because he ". . . will be a material
witness . . . at the impending trial."   Keenan asserted that in
October 2003, Robison informed him that unless a settlement could
be reached in Case No. 03-1037, Ritchie wanted to recruit other
investors to get them involved in the litigation.   Keenan then told
McDonald that Ritchie "was basically threatening to wreck the
financial fortunes of all Defendants if we didn't 'pay up.'" As
previously noted, Case No. 03-1037 did settle, but without a word
being said about threats or extortion.

Judge Bostwick cancelled the scheduling conference and then,
by order dated September 1, 2005, he granted Keenan's motion to
withdraw.  A new scheduling conference was set for October 4, 2005.
On that day, Judge Bostwick entered a minute entry stating, in
pertinent part:

> Plaintiff did not appear. Defendant appeared through
> counsel Stephen E. Robison. The court advised that it had
> received a communication from plaintiff by facsimile
> transmission over the noon hour indicating that plaintiff
> desired to dismiss this action. A copy of that

-5-

transmission was marked as Exhibit "A." The court also advised that the Clerk of the Court had also received a similar communication from plaintiff by facsimile transmission over the noon hour. A copy of that transmission was marked as Exhibit "B." Defendant stated that he was not prepared at this time to execute the proposed stipulation of dismissal forwarded to him by plaintiff. Therefore, the Court set a status conference in this case for 11/18/2005 . . . .

On October 4, 2005, Robison emailed Keenan regarding what had occurred at the status conference earlier that day.  Robison stated that he asked Judge Bostwick to set a new status conference so that he could pursue sanctions:

I asked for this due to the strictures of Rule 11.  I plan on filing a motion for sanctions against McDonald and you.  We will file a motion for judgment on the pleadings and a motion pursuant to Rule 11.  We will seek monetary sanctions against McDonald and you.  Those sanctions will essentially be Howard's costs to defend.  Those costs are now in excess of $6,000.  Those costs will grow when we seek sanctions.

I had to do it this way due to Rule 11 and its safe harbor of 21.  I will file them early next week; as you know, the motion to dismiss on the pleadings will be filed in the court file, but the motion for sanctions will be sent to you and to McDonald without filing it in the court file.  In the motion for sanctions that will not be filed with the court until the expiration of 21 days, I will demand the dismissal be with prejudice rather than without prejudice.  If you do not agree to the prejudice dismissal, we will argue the motion to dismiss on the pleadings.  If McDonald agrees to a dismissal with prejudice, we will withdraw our motion for sanctions.

I thought it appropriate to let you know what I am planning; if McDonald dismisses with prejudice, there will be no need for either motions mentioned.  The case will be dismissed and we will not seek sanctions.

I know you have withdrawn from this case, but since you are still on the hook for sanctions (if we obtain them), I thought I would correspond with you about this.

Keenan's response to Robison's email, if there was one, is not in the record.

On October 27, 2005, Ritchie filed his motion for judgment on the pleadings.   On November 18, 2005, McDonald, once again represented by Keenan, filed his opposition to the motion.   Then, on November 21, 2005, in compliance with the 21-day "safe harbor" provision of Fed. R. Civ. P. 11(c)(1)(A), Ritchie filed a motion for sanctions against McDonald and Keenan as well as a motion to strike certain documents attached to McDonald's memorandum in opposition to the motion for judgment on the pleadings.

On December 9, 2005, McDonald and Keenan filed an extensive memorandum in opposition to the motion for sanctions and a memorandum in opposition to the motion to strike.   In addition, and also on December 9, McDonald, still represented by Keenan, filed a motion to dismiss without prejudice.   In support of the motion, Keenan stated:

1. Richard McDonald's attorney, Martin J. Keenan, became a witness in the case and is disqualified from being Plaintiff's lawyer at the trial of this matter.

2. Richard McDonald has been unable to get a lawyer in the Wichita area.

3. Dick McDonald has obeyed all court orders and has cooperated fully.

4. Dick McDonald offered a "Stipulation of Dismissal" to Ritchie in October, which Ritchie rejected. Ritchie then clogged the Courts with a flurry of paperwork and Motions which are a waste of the Court's time and ran up the legal fees of both

-7-

parties.

The file reached this court's desk in early January 2006. By letter dated January 4, 2006, the court notified the parties' counsel that Ritchie's motion to dismiss would be treated as one for summary judgment in view of the affidavit of Thomas Moore attached to McDonald's memorandum in response to Ritchie's motion, citing Rule 12(b)(6) and <u>Burnham v. Humphrey Hospital Reit Trust, Inc.</u>, 403 F.3d 709, 713 (10th Cir. 2005). Each counsel was given until January 23, 2006 to submit additional materials relevant to consideration of Ritchie's converted motion. The court advised counsel that if no additional materials were submitted, the motion to dismiss would be decided as one for summary judgment. Ultimately, Ritchie submitted a short memorandum in support of his motion for summary judgment. McDonald submitted nothing.

In his January 4 letter, the court went on to observe:

> It is obvious that there are hard feelings between the parties and counsel. I don't want this to be misinterpreted as any sort of prejudgment of either motion, but I am very concerned by Mr. Keenan's statements such as "the key for them to win is to all 'tell the same story' and that story they told was false. Obviously, they were coached by Mr. Robison to say the same things . . . " and "this type of 'parroted' testimony from witnesses is very indicative of perjury." (Doc. 16 at 11 and Doc. 21 at 12). The suggestion that Mr. Robison would suborn perjury amounts to an accusation that Mr. Robison committed a crime.
>
> On or before January 23, Mr. Keenan shall submit <u>evidence</u>, if any there be, to support his statements. Mr. Robison may respond by February 6.

The response filed by McDonald and Keenan does not identify any direct evidence of perjury or that Mr. Robison suborned

-8-

perjury.[2]   Instead, McDonald and Keenan suggest that indirect or circumstantial evidence of perjury exists through the following syllogism: Robison represents the plaintiffs suing McDonald in the state courts; in order to recover, the state court plaintiffs must prove that McDonald acted as an "agent"; the deposition testimony of the plaintiffs has been that they relied upon and trusted McDonald's assurances regarding the investments; the plaintiffs in the state court cases are well-educated and sophisticated; McDonald never talked to some of the plaintiffs; nevertheless, the plaintiffs' claims against McDonald are similar and that "the testimony of the Plaintiffs seems tailored to defeat Kansas oil and gas exemption, almost as if the witness had a legal roadmap, given the fact that all ten Plaintiffs are not trained in the law, the only plausible explanation for their carefully tailored testimony is that a lawyer assisted in this effort.  Steve Robison is the only lawyer for all ten Plaintiffs and I know of no other lawyer involved."

McDonald and Keenan then proceed to accuse the state court plaintiffs of perjury, with Robinson's help:

> The goal of all Plaintiffs is to get their money back. And if Dick McDonald is just a "middleman," the oil and gas exemption remains intact, and all Plaintiffs lose, and are stuck paying Mr. Robison's legal fees with no refund on their purchases. They have the motive, the means and opportunity to give false testimony, and they work as a team, showing up at one another's trials to testify. Like the Three Musketeers, the eleven Plaintiffs are: "One for all, and all for one." Same lawyer. Same legal theories, Same common interest in getting their money back.

---

[2]The response states that it is being filed on behalf of Keenan, as well as McDonald.

McDonald and Keenan go on to cite the elements for perjury in Kansas and aver that "the case for perjury is circumstantial" because the various plaintiffs' discussions with Robison are privileged and inaccessible.  Keenan further claims that the "perjury allegation is an element of the 'civil conspiracy' claim made in this case" and ". . . based on the current evidence available, I believe that there is clearly a prima facie case to be made."  Keenan asserts that "discovery would only buttress the case in my view."

In his response, Robison categorically denies Keenan's allegations he committed perjury or provided a "roadmap" for his clients to commit perjury.  Robison disputes Keenan's legal theory that the state court plaintiffs must prove that McDonald was an agent in order to recover.  He also points out that although Keenan has accused the state court plaintiffs of committing perjury, he has offered no evidence to support the accusation.  Instead, Robison believes that the consistency of each plaintiff's testimony regarding McDonald can be explained by the fact that "all investors received the same sales pitch from McDonald."  Robinson notes the incongruity between Keenan's assertion regarding McDonald's "winning defense" to the state court plaintiffs' claims and the fact that McDonald settled what amounted to essentially the same claims in Case No. 03-1037.  He concludes:

> It is notable that Mr. Keenan's accusations of perjury only surfaced when he and McDonald were put to the task of justifying the filing of the present retaliatory lawsuit. Mr. Keenan has gone to great lengths, including making baseless claims of perjury and subornation, to avoid sanctions for a groundless suit. He attempted in an earlier argument before this Court to

-10-

establish his credibility by stating that he was a Phi Beta Kappa in college. As such, he is obviously capable and knowledgeable about perjury and his duties to the Court and to opposing counsel. Mr. Keenan has egregiously failed in those duties.

With this rather extended summary of the background facts in mind, the court now proceeds to consider Ritchie's dispositive motion, which has been converted to a motion for summary judgment.

<u>Additional Facts</u>[3]

1.    In April of 2003, Howard Ritchie contacted Lanny Hale, who he knew to be a fellow investor in Alma, Inc.

2.    Ritchie discussed with Hale the frustration he felt regarding his Alma, Inc. investments and told Hale that he had retained an attorney.

3.    Hale took the information he received from Ritchie to his local attorneys in Wisconsin. Those attorneys reviewed the information provided and contacted Steve Robison, who was representing Ritchie in his suit against Alma, McDonald, Jim Moore and Tom Moore, for the sale of unregistered securities.

4.    Hale's Wisconsin attorneys advised him to file an action against Alma, McDonald, and the Moores for the sale of unregistered securities.

5.    Howard Ritchie did not contact Robert Merar concerning his investments in Alma, Inc.

6.    When his own investments in Alma proved unsuccessful, Merar asked his local attorney in Wisconsin to do investigating

---

[3]The facts are taken from Ritchie's memorandum in support of his motion for summary judgment (Doc. 25). They are properly supported and are uncontroverted. Many of the facts are contained in the materials submitted by McDonald, as well.

into Alma. Through this investigation, the attorney learned of Ritchie's pending lawsuit against Alma, McDonald and the Moores for the sale of unregistered securities.

7.   Merar's local attorney contacted Ritchie's attorney, Robison, to obtain to obtain more information about the suit. It was only after this contact that Merar spoke to either Ritchie or Robison.

8.   Both McDonald and his counsel, Martin Keenan, were present at the deposition of Hale taken on October 18, 2003.

9.   Both McDonald and Keenan were present at the deposition of Merar taken on March 9, 2005.

<u>Summary Judgment Standards</u>

The parties are familiar with the standards pertaining to motions for summary judgment, which will not be detailed herein. The court notes with respect to Keenan's statement that "discovery would only buttress the case" that Keenan has not utilized the procedures required by Fed. R. Civ. P. 56(f). <u>See</u> <u>Committee for the First Amendment v. Campbell</u>, 962 F.2d 1517, 1522 (10th Cir. 1992). The court will not deny a properly-supported motion for summary judgment because of a non-moving party's counsel's speculative hope that unspecified discovery will save his client's case.

Ritchie asserts that Wisconsin law applies but that Wisconsin and Kansas law are the same. McDonald does not dispute Ritchie's assessment of the applicable law. Indeed, McDonald cites no Wisconsin case law and only one Kansas case. Instead, McDonald relies on general statements from Am. Jur. 2d which, the court was

-12-

somewhat surprised to learn, is still being published.

## Abuse of Legal Process

McDonald's first claim is that Ritchie "abused the legal process" by contacting the plaintiffs in the state court cases and other investors.  Ritchie, in fact, did contact other investors, including at least one of the plaintiffs in the state court cases. He asserts that his actions are protected by the First Amendment and, in addition, did not constitute abuse of the legal process because McDonald does not allege, nor has he produced, any evidence which demonstrates that Ritchie used a legal process.

McDonald's explanation of his abuse of process claim defies summarization.  Therefore, it is set out in full:

> The "abuse of process" deals specifically with the two additional lawsuits brought in Kansas – the Hale lawsuit, brought in Russell County, Kansas, and the Merar lawsuit, brought in Johnson County, Kansas.  Although Ritchie did not bring these in his own name, he played a critical role in contacting the individuals, persuading them to sue, and lining them up with the same lawyer. Obviously, they all engaged in a "fee sharing" arrangement, also. All of this was orchestrated by Ritchie, with the help of Stephen Robison.

> Ritchie's ulterior motive is key: 1 Am. Jur. 2d, "Abuse of Process," Section 3:

>> The ulterior motive or purpose generally required in an "abuse of process" action may take the form of coercion to obtain a collateral advantage not properly involved in the proceeding itself, such as the surrender of property or the payment of money by the use of process as a threat or a club; there is, in other words, a form of extortion.

> Ritchie recruited, convinced, cajoled and got the other lawsuits going for one reason – to use those other lawsuits as a club to force a settlement for himself. Does Ritchie care whether the other Plaintiffs get their money? Of course not.  They were used. In fact, one said

-13-

Plaintiff, Lanny Hale, had his case dismissed with prejudice in Russell County, Kansas, in October, 2005. What did he end up with? Nothing. However, Ritchie got his money.

Ritchie's first abuse of process was in misusing Discovery in the case. In particular, in order to show that the oil and gas exemption applied, Alma, Inc. needed to show that there were fewer than 32 investors in each deal. As a result, the list of investors was produced. Instead of accepting that as proof that the 32 limit was not exceeded, Ritchie used the Discovery for a totally different purpose - to establish a calling list to call other potential Plaintiffs. Misuse of Discovery or deposition procedures constitutes abuse of process:

> An action for abuse of process may lie for the misuse of Discovery or deposition procedures, such as the noticing of depositions and various motions to compel production, 1 Am. Jur. 2d, "Abuse of Process," Section 12.

Ritchie got the names of the investors, and he should have done nothing with them, because they were produced simply to prove that there were fewer than 32 people in each deal. However, Ritchie called investors all across country to try to ruin Richard McDonald and Alma, Inc.

As stated by 1 Am. Jur. 2d, Section 17:

> Any person who makes use of a legal process for some private, personal purpose that is beyond the scope of the process, or who normally participates in its use for such a purpose is liable for damages for abuse of process. A person is also liable for abuse of process if he or she procures the improper initiation of a proceeding by a third party.

Ritchie played an active role in sharing legal fees and costs with the other Plaintiffs. He is listed as a witness in both of the cases he recruited, and he is actively involved in pushing those cases. Hence, a Jury could find him liable for abuse of process. As stated by 1 Am. Jur. 2d, "Abuse of Process," Section 19:

> Liability for the abuse of process tort generally extends to all who knowingly procure, participate in, aid or abet the abuse, and those who advise or consent to the abusive acts, or who subsequently adopt or ratify them, are liable as joint tort--feasors.

-14-

> Ritchie bent over backwards to aid and abet in getting the lawsuits going for Hale and Merar.

(Doc. 16 at 6-7.)

McDonald's explanation is long on rhetoric but completely lacking in material factual support. McDonald claims that "Ritchie's *first* abuse of process was in misusing Discovery [sic] in the case." (Emphasis added). The court assumes that McDonald is referring to Case No. 03-1037 because that is the only case in which Ritchie was a party and in which discovery was conducted. However, McDonald does not describe the "misuse" and he never made a claim in Case No. 03-1037 that Ritchie was "misusing" or abusing discovery. Such "misuse," had it occurred, would have been obvious to Keenan during the discovery phase in Case No. 03-1037 because the state court cases were pending. McDonald and Keenan's failure to object to what they now assert as "misuse" falls into the same category as their failure to tell the court that McDonald was being coerced into a settlement, which seems to be the second leg of McDonald's "abuse of process" claim. If, in fact, McDonald was coerced or forced by extortion to settle, then the "abuse" was the false representation to the court that the settlement was "good" and Keenan's failure to inform the court of what he now claims to be criminal conduct. Both McDonald and Keenan seem unable to appreciate the irony of their claim that Case No. 03-1037 was settled under coercion but that they have not sought to set the settlement aside on that ground.

Under Wisconsin law, abuse of process requires a plaintiff to prove a "willful act in the use of process not proper in the

regular conduct of the proceedings and a subsequent misuse of the process." <u>Schmidt v. Klumpyan</u>, 264 Wis. 2d 414, 663 N.W. 2d 331, 335-37 (2003).  The process must be used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he would not legally be compelled to do.  <u>Id.</u>  Even if McDonald had <u>evidence</u> that Ritchie encouraged others to sue McDonald (which there is none), that would not constitute abuse of process, even if Ritchie's purpose was improper.  McDonald's assertion that he was coerced to settle Case No. 03-1037 is not supported by evidence and is contrary to his direct response to the court's question regarding the validity of the settlement.  The court cannot identify any element of "process" or misuse of process by Ritchie in connection with the settlement.

In conclusion, McDonald and Keenan's rhetorical arguments do not constitute disputed material facts and therefore there is no jury issue in connection with McDonald's abuse of process claim. Ritchie is entitled to summary judgment as a matter of law.

<u>Intentional Interference With Contractual Relations</u>

McDonald alleges in his petition:

> Plaintiff had a contractual relationship with Robin Lord and Barrie Merar (employer-employee), through his consulting business, and Defendant interfered with said relationship by calling and persuading the Merar group of Plaintiffs to sue in Johnson County, Kansas.  Both employees, who served as personal secretaries to Richard McDonald, immediately and angrily quit working for McDonald on January 26, 2004 and joined the parade of lawsuits, orchestrated by Ritchie to extort money. Barrie Merar sued and Robin Lord's husband sued in Johnson County case.

(Doc. 7, Ex. A at 4).

Ritchie seeks summary judgment on this claim on the basis that

-16-

he did not improperly interfere with McDonald's relationship with his secretaries.   Once again, rather than try to summarize McDonald's opposition to summary disposition, it will be set out in some detail:

> In the case at bar, Richard McDonald had a contractual relationship with his secretary, Robin Lord. She handled his business affairs.   Mr. McDonald had a reasonable expectation that the business relationship would be continued. Ritchie knew that Robin Lord was Richard's secretary.
>
> Robin Lord's best friend is also a former secretary of Richard McDonald – Barrie Merar.  After Howard Ritchie contacted the Merars, Ritchie destroyed their relationship with Richard McDonald, and Robin Lord immediately resigned as his secretary in anger.  Robin Lord quit because of what Ritchie told them – and what Ritchie told them was not true.
>
> The circumstantial and direct evidence at trial would be overwhelming that Howard Ritchie told each of these recruits the following:
> 1. Tom and Jim Moore of Alma, Inc. were crooks, and were in trouble with the Kansas Securities Commission and failed to register their securities in violation of law;
> 2. "Their friend," Richard McDonald, was secretly an employee for Alma, Inc., and was being paid "under the table" and "making money off of his friends."
>
> 3. A lawyer in Wichita named Steve Robison could get their money back – a sure thing, a technicality.
>
> Obviously, the Merar group and other Plaintiffs who chose to file suit were enraged at Richard McDonald, but Mr. Ritchie didn't tell them the truth.
>
> The truth is that Alma, Inc. has a clean record with the Kansas Securities Commission, and has never been sued until Howard Ritchie sued them.   Second, there are no violations of the Kansas Securities Act, as Kansas law forbids hiring <u>agents</u> to make sales, which Alma, Inc. has never done.   Next, Richard McDonald repeatedly turned down "finders fees" which are not banned by Kansas law, but finally relented after the Moore brothers insisted that he take the money as a gift for referring people to

Alma, Inc. McDonald himself invested in 49 wells, over a period of twenty years, far more than all the Plaintiffs in all three cases combined. In other words, he thought it was a good investment, and he was simply sharing with friends what he believed to be a good investment. Of course, Ritchie didn't tell any of these folks that Richard McDonald was nothing more than a fellow investor, and that Alma, Inc. had paid finders fees to many people through the years, and that they themselves would be eligible for finders fees if they ever identified prospects who later chose to invest after receiving the sales presentation by Jim Moore. Ritchie never told his recruits that Alma, Inc. had a spotless record or that the monies paid to finders came out of the pockets of Jim and Tom Moore – not the investors. Ritchie never told his recruits that Richard McDonald turned down finders fees for years and only relented in accepting them when they were described as "a gift" (Appendix M, Deposition of Richard McDonald).

Howard Ritchie, perhaps one of the most proven television ads salesman in the United States, misled the Merars, Robin Lord, and all other Plaintiffs to believe that Richard McDonald was an employee for Alma, Inc., that Alma, Inc. was a "fly by night" operation, etc. None of this is true. Alma, Inc. follows all of the requirements under the oil and gas exemption for the Kansas Securities Act scrupulously. No agents or salesmen have ever been hired or paid.

* * *

Not only did Robin Lord quit her employment, but her husband sued Richard McDonald, as he is one of the Plaintiffs in the Merar suit. Howard Ritchie has viciously worked like a wrecking ball to destroy the reputation and good name of Richard McDonald, to interfere with his contractual relations, and to try to ruin him financially. He clearly engaged in "interference with contractual relations," which led to his secretary quitting, and her husband bringing a lawsuit against Richard McDonald in Kansas.

(Doc. 16 at 8-10).

As before, McDonald's opposition to Ritchie's motion is mainly rhetoric, unsupported by facts. Wisconsin law requires that intentional interference with a contract also must be improper. Mackenzie v. Miller Brewing Co., 234 Wis. 2d 1, 608 N.W. 2d 331,

349 (2000).[4]  Robin Lord was McDonald's secretary; Barrie Merar was McDonald's _former_ secretary.  McDonald does not explain how, as a matter of law, he could have a contractual relationship with a _former_ secretary or how Ritchie could improperly interfere with such an apparent non-relationship.

Assuming, for purposes of discussion, that a non-terminable at will contractual relationship existed between McDonald and Robin Lord, McDonald has presented no evidence to support his contention that Ritchie told Lord something which was not true and that Lord terminated the contractual relationship as a result.  It is worth noting that while no discovery has been conducted in _this_ case, considerable discovery was conducted in Case No. 03-1037 as well as in the state cases.  The court has reviewed every page of the exhibits attached to McDonald's memorandum in opposition to Ritchie's motion for judgment on the pleadings (Doc. 16) including excerpts of the deposition testimony of Lanny Hale in Case No. 03-1037 (Appendix L), excerpts from the deposition testimonies of Robert Merar and Scott Lord, plaintiffs in the Johnson County lawsuit (Appendix L), deposition testimony excerpts of McDonald in an unidentified lawsuit (Appendix M), the affidavit of Thomas Moore in this case (Appendix N) and excerpts of Ritchie's deposition testimony in an unidentified case (Appendix O).  Keenan has not identified the specific portions of the deposition testimony which

---

[4]_Mackenzie_ also states that there can be no tort liability for interference with a contract terminable at will.  The nature of Lord's employment with McDonald is not in the record.  Of course, if it was terminable at will, then McDonald's claim would fail as a matter of law.

he believes create a factual dispute regarding whether Ritchie <u>improperly</u> interfered with the contractual relationship between McDonald and Lord.   The deposition excerpts show that Ritchie communicated with the witnesses but that is not in dispute.   In point of fact, the only testimony which would conceivably relates to the tortious interference claim is that of Robert Merar, whose wife was McDonald's <u>former</u> secretary.   This is what he said:

Q.   Did you do any independent investigation of Alma?

A.   My wife and I trusted Dick and Dick told us that he had checked it out and that he, before he even got into it he checked out Jim and Tom and that they were very, very upstanding individuals.   And that was pretty much when Dick told me that that's pretty much all I really needed to know.

Q.   Was your wife still working for him at the time?

A.   She was.

Q.   Now, when you talked to Dick he didn't, when you talked to Dick about the oil business he didn't have any written materials or anything like that, did he?

A.   I didn't see any from Dick, no.   He told me that he had worked for Alma doing some marketing for them and talked to me about some of the letters that Jim wrote and how he thought that they should be a little bit better and worked on writing those, but, no.

Q.   *Now, did you ever talk to Scott Lord or his wife about the investments, I mean, at the time the investments were being made?*

     *A.*   *No.*

(Doc. 16, App. L at 36-37) (emphasis added).  Obviously, this testimony does not support McDonald's claim.

The deposition excerpts of Barrie Merar and Scott Lord, whose testimony theoretically could support McDonald's claim that Ritchie acted improperly, clearly do not do so.  Accordingly, Ritchie is entitled to summary judgment on McDonald's intentional interference with contractual relations claim.

<u>Civil Conspiracy</u>

McDonald's final claim is that a "civil conspiracy" exists between Ritchie and the plaintiffs in the state court cases.  To be as fair as possible to McDonald, the court once again quotes at length from his explanation of this claim:

> In order for civil conspiracy to lie, the claim must base itself on a valid, actionable underlying tort.
>
> In the case at bar, the underlying tort is "abuse of legal process." Two or more persons (Howard Ritchie, Jr. and Dr. Lanny Hale to name two persons), got together to accomplish an object. They had a meeting of the minds in the object of course of action (testify for one another). There were one or more unlawful acts (perjury and extortion). There were damages that resulted – the monies paid by Richard McDonald to settle the Ritchie case, which is one of the damages.
>
> At his own expense, Dr. Lanny Hale flew from out-of-state to Wichita, Kansas, to testify on behalf of Howard Ritchie, Jr.  His testimony was extremely favorable to Ritchie, which helped lead to the settlement. Bob Merar was also scheduled to testify in Wichita, but did not, because the case settled before he arrived in Wichita.  Here we have a case of Plaintiffs testifying for one another at their own expense, without being subpoenaed.
>
> The key for them to win is to all "tell the same story," and that story that they told was false. Obviously, they were coached by Mr. Robison to say the same things: "Dick McDonald did all of the selling."

These type of statements came from each of the witnesses: "Dick McDonald told me how great Alma, Inc. is, and I was totally sold after I talked to him." "I was 100% sold on Alma, Inc. after I talked to Dick McDonald." "I made up my mind when I talked to Dick McDonald to invest in Alma." "My contacts with Jim Moore, the salesman at Alma, Inc., had no affect whatsoever." "When Dick McDonald recommends something, my mind was made up." Attached are samples of the parroted testimony (Appendix L, Parroted Testimony).

We are expected to believe that when their friend Dick McDonald told them about a possible oil investment, very wealthy and successful people blindly became zombies and began to invest in serial investments, considering only Richard McDonald's recommendation. We are led to believe that these people did no independent investigation, asked no questions, and just signed contract after contract to invest in oil wells like zombies.

This type of "parroted" testimony from the witnesses is very indicative of perjury. Under K.S.A. 8-261(a), Kansas law states as follows:

> Any person who shall willfully and corruptly swear or affirm falsely to any material matter or thing required by the term of this act to be sworn to or affirmed, is guilty of perjury and upon conviction shall be punishable by fine or imprisonment as other persons committing perjury are punishable.

In other words, these individuals violated the criminal law of Kansas, in addition to violating the tort law against "abuse of legal process."

* * *

In addition, Howard Ritchie, along with others engaged in extortion. Extortion is a criminal offense, and "occurs when a person obtains money, behavior, or other goods and/or services from another by wrongfully threatening or inflicting harm to his person, reputation or property."

(Doc. 16 at 10-11).

Because the court has granted summary judgment to Ritchie on McDonald's abuse of process claim, he has no civil conspiracy claim. Nevertheless, as before, McDonald's theory of a conspiracy

-22-

has no factual support in record.   A basic element of a civil conspiracy claim in Wisconsin is the commission of a wrongful act. <u>Edwardson v. American Family Mutual Insurance Company</u>, 223 Wis. 2d 754, 589 N.W. 2d 436, 438 (1998).   McDonald has no <u>evidence</u> of a wrongful act by Ritchie and therefore Ritchie is entitled to summary judgment on McDonald's civil conspiracy claim.

In conclusion, Ritchie's converted motion for summary judgment (Docs. 13 and 14) is granted.   Ritchie's motion to strike (Doc. 18) and McDonald's motion to dismiss (Doc. 23) are moot.

Ritchie's Motion for Sanctions

Having sustained Ritchie's converted motion for summary judgment, the court now turns to Ritchie's motion for sanctions pursuant to Fed. R. Civ. P. 11.[5]   Ritchie asserts that: McDonald's claims are not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law, Rule 11(b)(2); McDonald's allegations and other factual contentions have no evidentiary support, Rule 11(b)(3); and McDonald and Keenan failed to conduct an adequate investigation before filing suit.

McDonald's memorandum in opposition to Ritchie's motion for sanctions does not even mention Rule 11.   Instead, McDonald introduces his opposition with the following explanation:

> The lawsuit of <u>Richard McDonald v. Howard Ritchie</u> was meticulously researched and investigated before the case was filed. In fact, counsel was fanatical about waiting until a "smoking gun" was discovered to implicate

---

[5]The court recognizes that it would be improper to award sanctions merely because Ritchie's motion has been sustained and the court has not done so.

Ritchie. That "smoking gun" was discovered when counsel interviewed Bob Sowinski, who indicated that Ritchie called him and that "Ritchie called everybody." Sowinski had made clear to Tom Moore later that day that he had been told by Ritchie that the Moores and Dick McDonald were crooks, but that he wanted to come to Kansas and investigate it himself. He said he was a "big boy" and would investigate this himself rather than taking Ritchie's word (Appendix A, Tom Moore Affidavit).

The instant lawsuit is an excellent lawsuit. It is winnable at trial. I believe that after discovery had been completed, including a disclosure of phone records, emails, airplane tickets and so forth,
that a compelling case could be made at trial.

But Stephen Robison is clever. He wrote to me and indicated that he wanted to take my deposition (Appendix B, Robison letter). I immediately told Dick McDonald, "It looks like I'm going to be a witness in the case, so I am going to have to withdraw." I didn't want McDonald to lose his attorney on eve of trial due to the fact that his lawyer would be a witness at trial.

I did not withdraw because it was a weak case – I withdrew because I didn't want McDonald handicapped by having a lawyer who would probably be disqualified before the trial. I have talked to several attorneys in Wichita about handling the case, and the ones I have talked to have said they are "friends with Steve Robison," or that they "don't want to get involved in a matter in which Steve Robison is accused of wrongdoing." Having practiced in Wichita for three and a half years before moving to Great Bend, I know that the Wichita bar is a closely-knit association, and that very few lawyers are willing to take a case in which another lawyer is accused of misconduct. More importantly, the could [sic] of sanctions allegations by Robison makes lawyers think it is a tough case. Therefore, we made an "offer of stipulated dismissal without prejudice" to Steve Robison. It would have taken him five seconds to sign a piece of paper and this case would have been over. However, he flatly refused.

How do I know that Howard Ritchie engaged in abuse of process? Because Steve Robison basically told me Ritchie's plan (Appendix C, Motion to Withdraw as Attorney for Richard McDonald). Howard Ritchie used his salesman skills to do exactly what he said he was going to do – "ruin
people." The Lanny Hale suit was first (Appendix D, Lanny Hale lawsuit; Appendix E, Testimony of Lanny Hale). He did not even know Lanny Hale, but contacted him twice,

-24-

flew to Milwaukee and talked to him, etc.

The second case that Ritchie helped bring about was the Merar lawsuit (Appendix F, Merar lawsuit). The most convincing of all evidence regarding Ritchie's true character and motivation comes from the Cianfroni letter (Appendix G). Although this did not involve McDonald, Ritchie's goal from day one was "extortion through litigation." Ritchie even made a seemingly phony threat involving the IRS (Appendix H). Numerous witnesses gave testimony at the trial which I believe a jury could find as simply not believable (Appendix I). In summary, the only reason I withdrew as McDonald's attorney is because the letter I received from Steve Robison indicating he was going to take my deposition.

Of course, Howard Ritchie denies that he encouraged others, or that he "engaged in any wrongdoing" whatsoever. However, what would you expect? He certainly isn't going to admit in engaging in this abuse of process. However, the circumstantial case is absolutely overwhelming. Howard Ritchie engaged in malicious conduct and used litigation as a club. An award of sanctions in favor of Ritchie would be in error.

(Doc. 21 at 1-2).

McDonald and Keenan then attempt to explain that McDonald had no compulsory or permissive counterclaims to assert in Case No. 03-1037 and the settlement agreement in that case, allegedly drafted by Robinson, did not ". . . release any independent claims or non-compulsory counterclaims which Richard McDonald has in this matter. The idea that the parties settled all their differences for all time in that settlement is preposterous, because Richard McDonald would have never settled the case if he knew he was releasing his claims against Ritchie for independent torts committed by Ritchie long after Ritchie's lawsuit was filed. Furthermore, in the conversation with Judge Belot about the settlement, nothing is said by anyone about McDonald releasing any claims." McDonald then concludes his opposition by repeating his arguments regarding the

validity of his abuse of legal process, intentional inference with contractual relations and civil conspiracy claims.

The court finds that Ritchie's motion complies with Rule 11(c)(1)(A). The legal standard regarding imposition of sanctions is summarized in Scott v. Boeing Co., 204 F.R.D. 698, 700 (D. Kan. 2002):

> To avoid sanctions under Rule 11, an attorney must meet a standard of objective reasonableness. White v. General Motors., Inc., 908 F.2d 675, 680 (10th Cir. 1990). An attorney's subjective good faith belief in the merit of an argument does not suffice to meet this standard. Augustine v. Adams, 88 F. Supp. 2d 1166, 1174 (D. Kan. 2000). Instead, the attorney's belief must be "in accord with what a reasonable, competent attorney would believe under the circumstances." White, 908 F.2d at 680. It is within the discretion of the court to determine whether the claim or argument is warranted by law. Augustine, 88 F. Supp. 2d at 1174 (citing Schrag v. Dinges, 150 F.R.D. 664, 682 (D. Kan. 1993)).

> "[T]he primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit." White, 908 F.2d at 684. If Rule 11 is violated, however, the court may award "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Civ. P. 11(c)(2). The amount of sanctions should be the minimum amount necessary to deter future violations of the rule. White, 908 F.2d at 684-85.

By sustaining Ritchie's motion for summary judgment, the court has found that McDonald and Keenan have failed to identify any disputed issues of material fact which have evidentiary support requiring resolution by a jury. This finding satisfies Rule 11(b)(3). As previously noted, this case does not stand alone insofar as factual investigation and development of legal theories is concerned. The court is singularly unimpressed by Keenan's argument that McDonald could not pursue a counterclaim in Case No.

-26-

03-1037 and that McDonald did not release his claims against Richie because Robinson prepared the settlement document in Case No. 03-1037.  It strains credibility to believe that when McDonald settled Case No. 03-1037, he and Keenan were thinking about Rule 13 and how they would sue Ritchie in another case.  But the biggest problem with the argument is Keenan's repeated assertion that McDonald's agreement to settle Case No. 03-1037 was obtained by extortion. No competent, reasonable attorney would ever advise a client to settle a case under circumstances involving extortion with a hidden agenda to file another suit arising out of the same factual scenario.  Moreover, by permitting McDonald to affirmatively advise the court that the settlement was "good," Keenan's actions violated the spirit, if not the letter, of Rule 3.3 of the Model Rules of Professional Conduct (Ks. Sup. Ct. Rule 226).  Obviously, the court would not have stopped the trial due to the representations of the parties and counsel that a "good" settlement had been agreed upon if either McDonald or Keenan had stated, or even hinted, that the settlement was the result of extortion.  This satisfies the requirements of both Rule 11(b)(2) and (3) insofar as Keenan is concerned.

This leaves Keenan's statement that he was "fanatical about waiting until a 'smoking gun' was discovered to implicate Ritchie" before filing this suit.  This statement is patently disinguous. Keenan's reliance on the affidavit of Thomas Moore to the effect that he did not have a "smoking gun" until March 28, 2005 is transparently bogus.  Moore avers:

>           After all three lawsuits were brought by Ritchie, I

> had lunch with Bob Sowinski in Ellinwood, Kansas on March
> 28, 2005, and Bob Sowinski, an investor in several wells,
> told us that he had been contacted by Ritchie and
> recruited to sue, and that "Ritchie called everybody."
> In other words, Ritchie called all of the investors on
> the investor list to try to get them to sue. Sowinski
> knew many other investors, including Lanny Hale. Present
> at the March 28th lunch were Bob Sowinski, Jim Moore,
> Marty Keenan and myself. Keenan departed after lunch.

(Doc. 21-2, Appendix A). In his opposition to Ritchie's
dispositive motion, Keenan and McDonald admitted that they were
aware as early as 2003 of Ritchie's alleged "recruitment" efforts,
long before McDonald agreed to settle Case No. 03-1037. Indeed,
according to Keenan, it was precisely Ritchie's "recruitment
efforts" which constituted the extortion which "forced" him to
settle.

The court finds that the record clearly demonstrates that
McDonald's and Keenan's actions in pursuing this case are not
"objectively reasonable." The primary violation of Rule 11 is
Keenan's, who obviously has completely lost his objectivity and
ability to deal with the situation in a professional and rational
manner. Keenan's unsupported accusations of criminal conduct by
Robison are highly unprofessional and may warrant disciplinary
consideration. McDonald cannot escape responsibility, however,
because he has permitted Keenan to pursue a case which is bottomed
on McDonald's misrepresentation to the court that the dispute
between Ritchie and himself had been resolved. Parties who settle
a case are not legally required to be "happy" about the settlement.
But a settlement obtained by coercion or extortion can never be
"good" or valid. McDonald and Keenan either were not being
forthright with the court during the trial of Case No. 03-1037 or

-28-

they are not being forthright in this case.  Either way (or worse, both ways), their conduct is not objectively reasonable.  Monetary sanctions cannot be imposed against McDonald for his violation of subsection (b)(2) but they will be assessed for his violation of subsection (b)(3).  Sanctions will be assessed against Keenan for violations of both subsection (b)(2) and (3).

McDonald and Keenan are hereby ordered to pay Robinson's reasonable attorney's fees, including expenses, caused by their acts and omissions identified herein.  The court expects McDonald, Keenan and Robinson to make a good faith effort to agree on the sanctions and the division of responsibility between McDonald and Keenan.  In the event they are unable to agree, Robinson shall submit his motion in support of his fees and expenses, accompanied by affidavits, expense vouchers, record of billed hours and/or other evidentiary matters to this court on or before March 10, 2006.  McDonald and Keenan shall have until March 24, 2006 to respond.  A hearing will be held on April  3, at 1:30 p.m.


A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise

available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).

Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this <u>  22nd  </u> day of February 2006, at Wichita, Kansas.


<u>s/ Monti Belot                  </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE